UNION SAVINGS BANK *vs.* WILLIAM POOL & others.

CATHERINE POOL & another *vs.* UNION SAVINGS BANK & another.

Bristol. Oct. 28, 1886. — Jan. 5, 1887. DEVENS & W. ALLEN, JJ., absent.

A. and B., his wife, were each seised in fee of one undivided half of certain premises. A., as security for a loan to him, executed to a bank a mortgage of the entire premises, he covenanting, among other things, to pay all taxes assessed upon the premises. B. joined in this mortgage only in release of her right of dower and homestead. About five years afterwards, the bank discovered that B. owned one half interest in fee in the mortgaged premises. Upon request, she then executed and delivered to the bank a quitclaim deed of her interest in the premises; and the bank at the same time gave her an instrument of defeasance, by which the bank agreed that, in case the premises were sold for the purpose of paying A.'s mortgage to the bank, and one half of the proceeds of sale would pay the amount due on the mortgage, the bank would pay to B. the remaining half, and, if one half the proceeds were not sufficient, to pay to her such sum as might remain of the proceeds of said sale, after deducting therefrom all such sums as were lawfully due under said mortgage. It was the intention of all parties that the whole property should be mortgaged to the bank originally for the loan to A.; and the money borrowed had been expended, with the knowledge of the parties, in the improvement of the common property. C. bought, at a sheriff's sale, all the right in equity which A. had in the mortgaged premises at the time when they were attached on mesne process against him, which was prior to the deed from B. The bank afterwards sold the premises, under a power of sale contained in the mortgage, for very nearly its market value at the time; and brought a bill of interpleader against A., B., and C. to determine the ownership of the surplus proceeds of the sale. *Held,* that such proceeds belonged to B.; that the payment of taxes by the bank which had become payable before the sale, but which it had not paid until after the sale, was properly allowed the bank; and that B. was not entitled to interest on the money while it was held by the bank.

THE FIRST CASE was a bill of interpleader, filed May 5, 1884, against William Pool, Catherine Pool, his wife, and Charles W.

Anthony, to determine the ownership of a sum of money, being the surplus proceeds of a sale of land under a power contained in a mortgage to the plaintiff bank.

THE SECOND CASE was a bill in equity, filed May 20, 1884, by Catherine Pool and William Pool, against said bank and Anthony, to set aside the sale and conveyance of said land, and to redeem the same from the mortgage.

The cases were heard together by *W. Allen*, J., and reserved for the consideration of the full court; such decrees to be entered as law and justice might require. The facts appear in the opinion.

*H. K. Braley*, for the bank.

*E. L. Barney*, for William Pool and Catherine Pool.

*A. H. Hood*, for Anthony.

GARDNER, J. William Pool and Catherine, his wife, were each seised in fee of one undivided half of certain premises. In 1872, William executed a mortgage of the same to the Union Savings Bank, in which he covenanted that he was lawfully seised in fee of the entire granted premises, and that he had good right to sell and convey the same. In this mortgage Catherine joined only in release of her right of dower and homestead. This mortgage was recorded on July 15, 1872. About five years after the mortgage was delivered, the bank discovered that Catherine owned one half interest in fee in the estate mortgaged. Upon request, she, on August 28, 1877, thereupon executed and delivered to the bank a quitclaim deed, recorded the next day, of her interest in the premises, and the bank simultaneously gave her an agreement or instrument of defeasance, by which the bank agreed that, in case the premises were sold for the purpose of paying her husband's mortgage to the bank, and one half of the proceeds of sale would pay the amount due on the mortgage, then it would pay to her the remaining half, and, if one half of the proceeds were not sufficient, it would pay to her such sum as might remain of the proceeds of said sale, after deducting therefrom all such sum or sums as were lawfully due on or under said mortgage. This agreement was not recorded.

The quitclaim deed of Catherine to the bank, and the agreement given to her, constituted a mortgage of her undivided half

of the estate. *Bayley* v. *Bailey*, 5 Gray, 505. *Murphy* v. *Calley*, 1 Allen, 107. The bank thus held two mortgages upon the estate. It had advanced money to William Pool upon his mortgage. That of Catherine was given to secure the payment of the loan to William. The interests of William and Catherine in the estate mortgaged were separate and distinct, and the mortgages were separate conveyances. They were not joint mortgages of the grantors. The facts, that it was the intention " of all parties that the whole property should be mortgaged to the bank originally for the loan," and that the money borrowed had been " expended with the knowledge of all parties in the improvement of the common property," cannot affect the character of the mortgages actually executed. These facts have no tendency to make the mortgages different from what they actually are, and we cannot declare them to be the joint mortgages of William and Catherine.

The defendant Anthony, in 1877, purchased, at a sheriff's sale, all the right in equity which William Pool had, in 1875, in the mortgaged premises, that being the time when they were attached on mesne process against him. What Anthony purchased at this sale was the right of William Pool to redeem his mortgage given to the plaintiff. He did not purchase any right, interest, or equity of Catherine.

On April 19, 1884, the bank sold to said Anthony the estate, under a power of sale contained in the mortgage given by William Pool. On April 21, 1884, the bank paid the taxes for the years 1882 and 1883, conveyed the estate to Anthony as purchaser at the sale under the mortgage, and also released to him the right of the bank in the estate of Catherine, in accordance with a statement made at the sale that this would be done. The amount bid for the property " was very nearly the market value of the property at the time of the sale; " and was greater than the amount due on the mortgage note, with interest, and the taxes then unpaid. One half of the proceeds of the sale was not sufficient to pay the mortgage debt.

Anthony contends that, the agreement of defeasance given to Catherine by the bank not having been recorded in the registry of deeds, and he having no actual notice of it, his rights cannot be affected by it. This may be conceded. We fail to see what

rights he has in the undivided half of Catherine. As already appears, the mortgages were not joint. So far as Anthony was concerned, he was a stranger to the interests of Catherine in the estate. She was entitled, as of her own right, to one undivided half of the same. By the terms of the agreement with the bank, the balance of the proceeds of the sale, now in the hands of the bank, belong to Catherine, and should be paid over to her.

The payment by the bank of the taxes was within the terms of the mortgage given by William, in which he agrees to pay " all taxes and assessments of every kind levied or assessed upon said premises," and was properly allowed in the account stated by the master to whom the cases were referred.

Catherine contends that she is entitled to interest upon the money due her, during the time she has been deprived of it. The bank has held the money as a stakeholder, ready to pay it to whichever of the claimants is entitled to it, and the facts do not show that the bank should be compelled to pay interest.

*Decrees accordingly.*